## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

ALGERNON W. TINSLEY,

               Plaintiff,

v.                                                  CIVIL ACTION NO. 3:09-0600

MICHAEL J. ASTRUE, Commissioner
Social Security Administration,

               Defendant.

### MEMORANDUM OPINION AND ORDER

        Pending before the Court is Defendant Michael J. Astrue's Motion for Summary Judgment and his Motion to Dismiss Plaintiff's Whistleblower Claim for Lack of Subject Matter Jurisdiction. [Doc. Nos. 37 and 47]. Also pending is Defendant's First Motion in Limine [doc. no. 50], Defendant's Motion to Strike Jury Trial [doc. no. 51], and Plaintiff's Motion to Allow Briefing of Race Discrimination Issues [doc. no. 59]. On November 29, 2010, the Court held a Pretrial Conference and entertained arguments on the motions.[1] For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's race and age discrimination claims, **DENIES** Defendant's Motion to Dismiss Plaintiff's Whistleblower Claim, and **DENIES** the Motion in Limine, Motion to Strike Jury Trial, and Motion to Allow Briefing.

---

[1]Plaintiff's Motion to Allow Briefing of Race Discrimination Issues was filed after the hearing.

# I.
## FACTUAL AND PROCEDURAL HISTORY

Plaintiff Algernon W. Tinsley is an African American male who was employed by the Social Security Administration, Office of Disability Adjudication and Review, in Huntington, West Virginia, as an Administrative Law Judge ("ALJ").  On or about March of 2008, Plaintiff received a thirty-day suspension from his employment for making false entries on the Agency's "Serial Time and Attendance Rosters" (SSA Form 30), on four separate occasions.  Plaintiff challenged the suspension before the Merit Systems Protection Board (MSPB), alleging, inter alia, that he was being discriminated against on the basis of age and race.  He also raised an affirmative defense under the Whistleblower Protection Act.

On August 26, 2008, a hearing was held before MSPB ALJ William N. Cates.  At the hearing, Charlie Paul Andrus, the Hearing Office Chief ALJ for the Huntington office and Plaintiff's first-line supervisor, testified.  Amongst his duties, ALJ Andrus stated he is in charge of keeping track of the other ALJ's time and attendance.  ALJ Andrus explained that, if an ALJ chooses to work hours different than 8:00 a.m. to 4:30 p.m., they must sign in and out on a SSA Form 30.  He further explained that the ALJs in the Huntington office each hear cases one week per month in Prestonsburg, Kentucky.  When they travel to Prestonsburg, they are considered to be in travel status so they do not normally complete an SSA Form 30.

ALJ Andrus testified that the problems for Plaintiff began in May of 2007 when there was an issue with a travel voucher he submitted after hearing cases in Prestonsburg.  In checking into the voucher, ALJ Andrus discovered that on May 18, 2007, Plaintiff signed out of the building

-2-

at 5:30 p.m. and claimed two hours of travel compensation to return to Huntington. ALJ Andrus said that he had information Plaintiff actually left the building around 4 or 4:30, which would have allowed him time to get back to Huntington without claiming travel compensation. In addition, ALJ Andrus stated that the building's alarm system had been armed before Plaintiff signed out. ALJ Andrus explained the alarm system is set after everyone has left the building. ALJ Andrus said he spoke to Plaintiff about the incident and Plaintiff told him he could not remember exact times, but if he said he was at the office working that is what he was doing. Thereafter, Plaintiff agreed to stay in Huntington and do hearings via teleconferencing.

Plaintiff held hearings by teleconferencing until August, when he returned to Prestonsburg for four days. Given the problems with the May time sheet, ALJ Andrus decided to investigate Plaintiff's August time sheet by again comparing his times to those of the alarm service. After learning there was a discrepancy with when the alarm was set and Plaintiff's sign out time, ALJ Andrus checked the guards' checkout sheet to see what time they left the building. ALJ Andrus stated that guards cannot leave the building if members of the public are present. However, if only employees or contractors are in the building, guards may leave at 5:30. If the last employee or contractor leaves before 5:30, then the guards leave at the same time because they do not have a key to lock the building or the code to set the alarm system. ALJ Andrus stated that Plaintiff's time sheet stated he checked out at 5:30, but the guards signed out earlier and Plaintiff did not say that he traveled back to Huntington until 6:00.[2]

---

[2]It appears in the testimony of Ray Burton, a security guard at the building, that the security guard on duty on August 24 left the building at 4:00 p.m.

Plaintiff returned to Prestonsburg in September and October.  ALJ Andrus found no problems with his September records, but he did find a discrepancy with his October time sheets between the time Plaintiff said he left and the time the office closed.  Given the problems with Plaintiff's records, he received a thirty-day suspension from his job.

During cross-examination, ALJ Andrus stated that it is the Agency's policy that a judge working at a remote site may work on cases in a hotel room, but they cannot claim credit hours for time spent outside the building where the hearings are held.  When pressed on the issue, ALJ Andrus further stated he did not know if the policy was written down anywhere and he had no knowledge of the policy ever being disseminated in writing to the ALJs.  He did say, however, that he orally advised Plaintiff he must be at the hearing building to earn credit hours.

When questioned as to whether ALJ Andrus was aware of discrepancies in the time sheets of any other ALJs, he said he found problems with three or four time sheets of ALJ David B. Daughterty, a white male.  ALJ Andrus stated he conducted an investigation, and he sent a report to the Chief ALJ Frank Cristaudo.  ALJ Andrus testified he handled ALJ Daughterty's case the same way he handled Plaintiff's case, but he stated ALJ Daugherty received no formal disciplinary action. ALJ Andrus stated he was unaware of any ALJs younger than Plaintiff who engaged in similar misconduct and was not punished for it.

Chief ALJ Cristaudo also testified at the hearing.  He said that he believed the thirty-day suspension was appropriate in Plaintiff's case because he was told a number of times about the

rules, yet he ignored the policy.  In addition, he held a position which encompassed expectations of honesty and integrity, and his actions failed to meet those standards.  He also said that Plaintiff was one of the least productive judges in the nation.  He asserted Plaintiff's race and age played no role in his decision.  In fact, he testified he was not even sure how old Plaintiff was.  In addition, Chief ALJ Cristaudo testified that he was unaware Plaintiff made certain disclosures to the Office of the Inspector General against the Agency.  Chief ALJ Cristaudo further related that, when he worked as a Regional Chief ALJ he knew about attendance violations by Judge Daugherty, but he had no authority at the time to discipline Judge Daugherty.  He did forward the information to his superiors, but he did not believe his superiors suspended Daugherty.  Chief ALJ Cristaudo stated it was not until about two years ago that he was given the authority to discipline ALJs.

After considering the testimony and the arguments of the parties, ALJ Cates upheld Plaintiff's suspension on October 21, 2008.  In his decision, ALJ Cates noted that Chief ALJ Cristaudo denied treating Plaintiff any differently on the account of his race or age.  Chief ALJ Cristaudo specifically stated he had proposed discipline against non-African American judges and against judges younger than what he thought Plaintiff was.  He further said he would have issued a disciplinary action against ALJ Daugherty if he had the authority to do so at the time.  Moreover, ALJ Andrus had treated Plaintiff and ALJ Daugherty exactly the same, by conducting an investigation and making reports to his superior.  ALJ Andrus further asserted he did not know of any judge younger than Plaintiff who engaged in similar conduct who was not disciplined based upon that individual's age.

With respect to Plaintiff's affirmative defense that he was disciplined in violation of the Whistleblower Protection Act, ALJ Andrus testified he had no knowledge or indication that Plaintiff had spoken to the Office of the Inspector General until he was prepared for his deposition. Likewise, Chief ALJ Cristaudo had no recollection of Plaintiff making a report to the Inspector General. Therefore, ALJ Cates found no evidence to support Plaintiff's claim. Accordingly, as ALJ Cates found the uncontested evidence established Plaintiff had falsified his time on the SSA 30 Form[3] and there was no evidence of discrimination or a violation of the Whistleblower Protection Act, ALJ Cates found Plaintiff was suspended for good cause and his suspension was appropriate.

Plaintiff appealed the decision, but it was affirmed by the MSPB on February 20, 2009. Plaintiff then appealed the decision to the Equal Employment Opportunity Commission, Office of Federal Operations ("EEOC, OFO"). On April 29, 2009, the OFO affirmed the decision. Therefore, on June 2, 2009, Plaintiff, acting pro se, filed a Complaint in this Court, alleging he was unlawfully discriminated against in his employment because of race, age, and retaliation for disclosure of fraud and conspiracy. Nearly a year later, Plaintiff retained counsel.

## II.
## DISCUSSION

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). Title VII declares that "[i]t shall be

---

[3]ALJ Cates specifically found that the Agency had met its burden of proof that Plaintiff made false entries on May 18, August 24, and October 18, 2007. He found the Agency had not met its burden with respect to May 16, 2007.

an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2 (a)(1) (2006). Under Title VII, a plaintiff can survive a summary judgment motion by offering direct or circumstantial evidence raising a genuine issue of material fact that race motivated an adverse employment decision or, in the alternative, an employee may proceed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004).

Under the *McDonnell Douglas* framework, the employee first must establish a prima facie case of racial discrimination. *McDonnell Douglas*, 411 U.S. at 802. Depending upon the facts presented, the elements of a prima facie case will differ. *Id.* at 802, n.13. In situations like this case, where Plaintiff has alleged disparate discipline based upon race, he must prove that: (1) "he is a member of the class protected by Title VII" or the Age Discrimination in Employment Act (ADEA); (2) "the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class;" and (3) "the disciplinary measures enforced against him were more severe than those enforced against those other employees." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993) (citation omitted). If the plaintiff establishes a prima facie case, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the disciplinary action. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff then "must demonstrate[] that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th

Cir. 2005) (internal quotation marks and brackets omitted).  It is well established that, even under

the *McDonnell Douglas* burden-shifting scheme, the ultimate burden of persuasion remains on the

plaintiff at all times. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citations

omitted).

In its motion for summary judgment, Defendant argues that Plaintiff cannot show that

his race played a role in the decision-making process or influenced the outcome.  Specifically, the

only employee Plaintiff points to as receiving more favorable treatment than him for committing

similar misconduct is ALJ Daughtery, a white male who is approximately 73 years old.  However,

as discussed at the Pretrial Conference, ALJ Daughtery is not a "similarly situated" employee for

comparison purposes because the decision maker involved in ALJ Daughtery's case is not the same

decision maker who disciplined Plaintiff in this case.

It is not refuted that at the time ALJ Daughtery was found to have committed similar

infractions, Chief ALJ Cristaudo had no authority to suspend him as that authority was vested with

someone else.  Instead, Chief ALJ Cristaudo did the only thing he had the authority to do and that

was forward the reports to his superiors.  Chief ALJ Cristaudo specifically stated that, if he would

have had the authority to discipline ALJs at the time, he would have disciplined ALJ Daughtery

based on the information he was given.  On the other hand, at the time Plaintiff was found to have

made false entries on his time sheets, there had been a restructuring of the Agency, and Chief ALJ

Cristaudo was given authority to discipline ALJs.  Thus, it is clear there were different decision

makers involved in determining whether Plaintiff and ALJ Daughtery should be disciplined, and

Plaintiff cannot rely upon ALJ Daughtery as a comparable employee. *See Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 Fed. Appx. 255, 257 (4th Cir. 2007) (per curiam) (citing *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 350 n.3 (7th Cir. 1997); *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)) (stating "[i]f different decision-makers are involved, employees are generally not similarly situated"); *Heyward v. Monroe*, 166 F.3d 332 (4th Cir. 1998) (per curiam) (same).

At the Pretrial Conference, Plaintiff raised for the very first time that another ALJ would testify that ALJ Daughterty continued to violate the time and attendance policy during the same time period as Plaintiff was found to have violated the policy. However, Plaintiff neither deposed the other ALJ nor obtained an affidavit from him. Likewise, Plaintiff made no mention of this proffered testimony in the Pretrial Order or in his Response to Defendant's Motion for Summary Judgment. Plaintiff orally moved the Court at the Pretrial Conference to allow him to obtain and submit an affidavit from the other ALJ, but the Court denied the motion as it would require reopening discovery on the eve of trial. Plaintiff now has filed a written motion to allow further briefing on the issue by asserting that his own deposition testimony indicates ALJ Daughtery was committing infractions during the time period Chief ALJ Cristaudo had the authority to discipline him.

The Court has reviewed the pages of Plaintiff's deposition he references in his motion and finds they do not support his position. The pages referenced involve Plaintiff's meeting with employees of the Office of the Inspector General. At the meeting, Plaintiff states he raised concerns about the time and attendance of ALJ Daughtery. However, he does not give a time frame of when

those infractions allegedly occurred.  Additionally, there is no evidence that his supervisors were made aware of his allegations that ALJ Daughtery was violating the time and attendance policy.  In fact, Plaintiff's own testimony is that he did not know if that information was ever reported to ALJ Andrus or anyone else in his office.  Thus, the deposition pages cited by Plaintiff are entirely insufficient to demonstrate that there were ongoing violations or that Plaintiff's supervisor knew of any ongoing violations.  Plaintiff simply has no evidence to show ALJ Daughtery is a comparable employee.  Moreover, as the Court made clear at the Pretrial Conference, it will not allow Plaintiff to raise an entirely new allegation on the eve of trial which will require reopening discovery.

Accordingly, as Plaintiff cannot show any other ALJ, who is a comparable employee, was treated differently than himself, his claim of race discrimination fails because he has no evidence to met his burden of proof on an essential element of his case.[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (stating "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *Fed. R. Civ. P. 56(c)*.  Therefore, the Court **GRANTS** Defendant's motion with respect to his race discrimination claim and **DENIES** Plaintiff's Motion to Allow Briefing on Race Discrimination Issues.

---

[4]Plaintiff contends that Article 6(a) of the Labor Agreement prohibits disciplining a judge for time and attendance violations based upon information gathered from a security device.  Although Plaintiff argues ALJ Andrus' check of when the alarm system set was illegal and demonstrates pretext in the Agency's actions, the Court does not even reach this evidence because Plaintiff failed established a prima facie case.

Turning next to Plaintiff's age discrimination claim[5] under the *McDonnell Douglas* framework,[6] the Court finds Plaintiff has no evidence that anyone outside the protected class was treated any differently than he was. In fact, the only person Plaintiff points to is ALJ Daughtery who is approximately 73 years old and actually older than Plaintiff. As Plaintiff cannot show anyone outside the protected class was treated differently or more favorably than he was, the Court **GRANTS** Defendant's motion on Plaintiff's age discrimination claim and **DENIES as moot** Defendant's Motion to Strike Jury Trial on the ADEA claim. The Court also **DENIES as moot** Defendant's First Motion in Limine to prohibit Plaintiff from introducing any evidence of his nondiscrimination claims during a trial on his race and age claims.

With regard to Plaintiff's claim for a violation of the Whistleblower Protection Act, the Court **DENIES** Defendant's Motion to Dismiss this Claim for Lack of Subject Matter Jurisdiction. As explained at the Pretrial Conference, the Court finds Plaintiff did not abandon his claim merely because he "may have made an obvious error"[7] in another MSPB case in which he denied he raised the issue as an affirmative defense in this case. As Plaintiff raised the issue below,

---

[5]Under the ADEA it is illegal for an employer to discriminate against an employee due to the employee's age. 29 U.S.C. § 623(a) (2006).

[6]*See Reeves*, 530 U.S. at 142 (assuming that the McDonnell Douglas burden-shifting framework applies to ADEA claims); *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir.2004) (applying *McDonnell Douglas* framework to ADEA claims). In *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009), the United States Supreme Court recently stated that "[t]o establish a disparate-treatment claim under the plain language of the ADEA,. . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." 129 S. Ct. at 2350. *Gross* also expressly left open the question of "whether the evidentiary framework of [*McDonnell Douglas*], utilized in Title VII cases[,] is appropriate in the ADEA context." *Id*. at 2349, n.2.

[7]*Plaintiff's Response to Defendant's Motion to Dismiss Whistleblower Claim*, at 2.

exhausted his administrative remedies, and raised the issue in the Complaint filed in this Court, the Court will allow the claim to proceed.  In that regard, the parties agreed at the Pretrial Conference that, as this action was brought as a "mixed case,"[8] the Court's review must be based upon the administrative record and the standards set forth in 5 U.S.C. § 7703(c).[9]  Accordingly, the Court **DIRECTS** the parties to meet and confer to discuss preparing the administrative record to be

---

[8]"A federal employee who asserts both discrimination in violation of Title VII and an 'adverse employment action' asserts a 'mixed case' . . . ." *Pueschel v. Peters*, 577 F.3d 558, 563(4th Cir. 2009) (citations omitted).  "Congress explicitly gave the district courts exclusive jurisdiction over mixed cases." *Afifi v. U.S. Dept. of the Interior*, 924 F.2d 61, 63 (4th Cir. 1991).

[9]Section 7703(c) provides:

> (c) In any case filed in the United States Court of Appeals for the Federal Circuit, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be--
>
>> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>>
>> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>>
>> (3) unsupported by substantial evidence;
>
> except that in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court.

5 U.S.C. § 7703(c).

submitted to the Court and a briefing schedule.  The Court **ORDERS** the parties to submit their plan

to the Court on or before **December 20, 2010**.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's Motion for

Summary Judgment on Plaintiff's race and age discrimination claims [doc. no. 37], **DENIES**

Defendant's Motion to Dismiss Whistleblower Claim for Lack of Subject Matter Jurisdiction [doc.

no. 47], **DENIES as moot** Defendant's First Motion in Limine [doc. no. 50], **DENIES as moot**

Defendant's Motion to Strike Jury Trial [doc. no. 51], and **DENIES** Plaintiff's Motion to Allow

Briefing of Race Discrimination Issues [doc. no. 59].  The Court also **ORDERS** the parties to submit

their plan regarding the filing of the administrative record and the briefing schedule on the

Whistleblower claim to the Court on or before **December 20, 2010**.  The Court further **CANCELS**

the Final Settlement Conference currently set on December 13, 2010, and the trial set on December

14, 2010.[10]

---

[10]At the Pretrial Conference, the parties also discussed a contract claim.  As that claim was
not made in the Complaint, the Court will not allow Plaintiff to pursue it.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        December 7, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE